# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN ALBERTO MENDOZA, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-0446 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his 2003 conviction and life sentence for murder. Respondent filed a motion for summary judgment (Docket Entry No. 21), to which petitioner filed a response (Docket Entry No. 24).

Based on a careful consideration of the petition, the motion for summary judgment and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### Background and Claims

Petitioner was convicted of murder in 2003 and sentenced to life imprisonment. The conviction was affirmed on appeal. *Mendoza v. State*, No. 01-03-00588-CR (Tex. App. – Houston [1st Dist.] 2004, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review on September 22, 2004. *Mendoza*, PD-0534-04. Petitioner's application for state habeas relief, filed in December 2005, was denied by the Texas Court

of Criminal Appeals on August 1, 2012.  *Ex parte Mendoza*, WR-77,583-01 (Docket Entry

No. 19-26).

Petitioner raises the following habeas claims in the instant petition:

1.  Trial counsel[1] was ineffective during punishment by threatening potential mitigation witnesses with criminal prosecution if they testified.

2.  Trial counsel was ineffective during guilt-innocence by failing to:

    a.  hire an investigator to investigate the witnesses' backgrounds;

    b.  examine or visit the crime scene;

    c.  cross-examine witnesses as to their criminal histories and gang affiliations; and

    d.  present exculpatory witnesses.

3.  Appellate counsel was ineffective in failing to seek a new trial.

### *Factual Background*

The First Court of Appeals set forth the following statement of facts in its

memorandum opinion affirming petitioner's conviction.[2]

---

[1] Petitioner was represented at trial by two attorneys – Mike Hernandez and Ramon Villagomez.  Mike Hernandez died on April 18, 2007.  Ramon Villagomez filed an affidavit in petitioner's state habeas proceedings.  For the sake of simplicity, "trial counsel" will be referred to in the singular.

[2] The State, as does this Court, relies on the Memorandum Opinion issued by the First Court of Appeals on March 18, 2004, as it appears on that court's official website.  The memorandum opinion appearing in Westlaw at 2004 WL 737509 is substantially different from the Memorandum Opinion issued by the First Court of Appeals, and will not be used here.

Appellant engaged in an altercation with Jesse Zuniga, Louis Quinones, Jose Lopez, Robert Witt, and several others outside his apartment complex. Appellant and his wife left the complex and went to his father's home to spend the night. Later that evening, appellant returned alone to the complex with a .9 millimeter handgun. The men were still outside the complex. Appellant spoke with Zuniga, then started shooting. Zuniga was struck five times, Quinones three times, and Lopez once. Appellant shot at Witt and missed, but the bullet ricocheted and struck Witt. Quinones died from a wound to his chest. Zuniga, Lopez, and Witt recovered and testified at trial. The medical records relating to Zuniga's and Witt's injuries were admitted into evidence at the punishment stage of the trial over the defense's objections that they were irrelevant and that their prejudicial effect outweighed their probative value.

*Mendoza*, No. 01-03-00588-CR, at *1.

The state trial court on collateral review set forth the following additional statement

of facts:

5.      The State's evidence at trial revealed a witness (Sarah Ocampo) tried to break up a domestic violence situation between the applicant and his wife, Ms. Moran. (3 R.R. 70–73). The witness helped Ms. Moran get to the bus station so that she and her child could leave Houston and return to her parents. (3 R.R. 78–80). Ms. Moran, however, did not actually leave town, and was seen at the complex later that day. (3 R.R. 82). The applicant became upset that outsiders had attempted to intervene in the marriage. (3 R.R. 84–85). There was a confrontation between the applicant, the witness, her husband and her brother, where the applicant accused them of breaking into his apartment and leaving a 'note.' (3 R.R. 190). The witness then sought out an explanation from Ms. Moran, which resulted in a fight between the two women. (3 R.R. 90–92, 227). The police were called and a report made. (3 R.R. 96–97). Shortly thereafter, the applicant returned, as the passenger of a car, pulled out a gun, and opened fire on the group of neighbors/family members, which included the aforementioned witness, all of whom were gathered outside playing marbles. (3 R.R. 103–108). State's witnesses testified that no member of the group that the applicant shot at was armed, and the physical evidence was consistent with that assertion. (3 R.R. 106, 152–153, 161, 186, 207, 232, 240–241, 244; 4 R.R. 27–29). Witnesses reported that the applicant had been driven to the shooting by someone who may have

been his brother, and the applicant's wife may have been present in the backseat of the vehicle during the shooting. (3 R.R 160, 206, 231). After the applicant left, it became apparent that Jesse Zuniga, Joe Lopez, and Louis Quinones were shot. (3 R.R. 114–116). Robert Witt had also been shot. (3 R.R. 118). As a result of the shooting, Louis Quinones died. (3 R.R. 243, 4 R.R 51).

6.      The applicant testified at trial on his own behalf. (4 RR. 57). The applicant's testimony was that he and his wife were arguing and he threatened to send her home on a bus to her parents, and there was no further incident. (4 R.R 58–59). He also testified that separately, he saw the aforementioned witness and asked her if she knew who had broken into his apartment and left a 'note.' (4 R.R. 60–61). The applicant testified that the discussion turned heated and the witness's family told him they were gang members and would kill him. (4 R.R. 62). He further stated that he then left his wife outside while he went in to retrieve some of their things and when he came back out, the witness and her family was beating up on his wife, for unknown reasons. (4 R.R. 66). He stated he left and returned later that night to get the rest of their things, but because of the previous threats, he came armed with a .9mm. (4 R.R. 67–68). When he arrived, he said, heated words were exchanged, and Jesse Zuniga reached to his back, the applicant believed, to pull out a gun. (4 R.R. 71–72). The applicant then said he saw Zuniga and Quinones with guns. (4 R.R. 71–72). At that point, the applicant admitted to shooting Zuniga and Quinones. (4 R.R. 71–73).

*Ex parte Mendoza*, pp. 173–74.

### Applicable Legal Standards

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by

the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. §2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the

presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Ineffective Assistance of Trial Counsel*

Petitioner claims that trial counsel was ineffective during the guilt-innocence phase of trial in that he failed to hire an investigator to investigate the witnesses' backgrounds; failed to examine or visit the crime scene; failed to cross-examine witnesses as to their criminal histories and gang affiliations; and failed to present exculpatory witnesses. Petitioner further alleges that trial counsel was ineffective during the punishment phase of trial by threatening potential mitigation witnesses with criminal prosecution if they testified.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was

7

the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).

To overcome this presumption, a petitioner must identify the acts or omissions of counsel

that are alleged not to have been the result of reasonable professional judgment. *Wilkerson*

*v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that,

but for counsel's unprofessional error, the result of the proceeding would have been different.

*Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient

performance renders the result of the trial unreliable or the proceeding fundamentally unfair.

*Id.*; *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

In responding to petitioner's claims of ineffective assistance of trial counsel, trial

counsel submitted an affidavit on state collateral review, in which he testified as follows:

> Mike Hernandez died four years ago.  He was lead counsel on this case.  Mike
> and I were not officially partners, but we did do a lot of work together.  I have
> looked back through my files, and found one small file with just a few notes.
> The bulk of the file would have been kept and maintained by Mike.  I don't
> know what happened to his files after his death, but I suspect many more
> questions would be able to be answered more concretely if we had his file.
> The following answers are based on my personal memory jogged by the few
> notes I still have.
>
> Mike Hernandez and I did consider calling witnesses Alma Moran, Cristobal
> Mendoza, Elidia Galindo, and Ervey Mendoza.  Mr. Juan Mendoza was a very
> strong-willed, intelligent defendant, who was adamant in who he would and
> would not let us call as witnesses.  The whereabouts of Alma Moran were

8

unknown to us for quite some time.  Mr. Mendoza told us not to worry about Alma Moran, that he was having her 'sent away.'  During the course of trial, we were finally able to locate her.  Mr. Mendoza refused to allow us to call her or secure her attendance at the trial.  There was some concern that Cristobal Mendoza and Ervey Mendoza were parties to the offense.  Mike Hernandez and I were concerned that if they were called to testify, they might be identified.  However, at no point did Mike Hernandez or I instruct them that they should leave the courtroom.  We did see one of the brothers at the courtroom, and we had originally intended to call one of the brothers to testify; however, the more we heard of what his potential testimony might be, Mike and I were concerned that the witness was not telling the truth, and Mike and I could not put ourselves in the position to be suborning perjury.  I do not believe that Mike or I ever saw or met with the other brother.  I can not specifically remember why.  He may have been made unavailable to us, I seem to recall him perhaps having absented himself.  As to the defendant's mother, the defendant did not want her to testify.  Mr. Mendoza was very protective of her.  There was some concern that she had harbored him from police between the time of the murder and the time of his arrest.  Mr. Mendoza did not want her to be cross-examined regarding that information.  Further, Ms. Galindo only would have been a witness at punishment and not guilt/innocence because she did not have any direct knowledge of the offense.

As for Lucy Garcia, I personally did not meet her until the date of trial.  I don't know when, if any, meetings were had between she and Mike, nor do I know what was discussed, if any discussions were had.  She did not really have any first hand knowledge that would have been helpful in guilt/innocence.  Everything she knew was hearsay. With respect to the statements of the State's witnesses before trial, the State maintained an open file policy in this case.  We had and did review the State's file.  The prosecutor allowed us reasonable access.  We found that the prosecutor was 'up front' in his dealings with us.  We saw and reviewed the statements in question.  Mike did all of the cross-examination.  I do not specifically remember what his strategy was with respect to these witnesses.

(Docket Entry No. 19-27, pp. 61–62.) The trial court expressly found trial counsel's affidavit

testimony credible.  *Id.*, p. 61.

In rejecting petitioner's claims of ineffective assistance of trial counsel, the trial court

made the following relevant findings:

12.  In order to obtain relief in a post-conviction writ of habeas corpus for ineffective assistance of counsel, an applicant must prove by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

13.  To make a showing of ineffective assistance of counsel, it is not enough that counsel's errors could have had some conceivable effect on the outcome of the proceeding.

14.  Even when counsel's performance has been deficient, where the proceeding was rendered neither unreliable nor fundamentally unfair, there is no prejudice.

15.  According to the credible affidavit of Ramon Villagomez, and supported by the record, counsel did not call additional punishment witnesses because the applicant was very specific in who he did and did not want called to testify.  (4 R.R. 55–56).

16.  According to the record at trial, counsel did attempt to have the applicant's mother (Elidia Galindo) excluded from the rule so that she could both listen to the testimony at guilt/innocence and testify in punishment.  (3 R.R. 13).

17.  Partway through the State's case, with the defendant present, the defense elected to not call Ms. Galindo as a witness, and have her released from the rule.  (4 R.R. 3).

18.  According to the credible affidavit of Ramon Villagomez, the applicant was adamant that he did not want his mother called as a witness because she could be subjected to cross-examination regarding her knowledge of his whereabouts during the two years that he was a fugitive.  (3 R.R. 249–250).

19.    According to the credible affidavit of Ramon Villagomez, the applicant told counsel not to worry about Alma Moran (his wife), that he was having her 'sent away.'

20.    As supported by the record, despite the applicant's desire that counsel 'not worry' about Alma Moran, counsel was still attempting to find her and had not foreclosed the idea that he might call her as a witness.  (3 R.R. 254).

21.    As supported by the record, trial counsel was able to contact Alma Moran during trial and indicated he would move for continuance to secure her attendance at trial, but the applicant indicated he did not want her called as a witness. (4 R.R. 56).

22.    According to the credible affidavit of Ramon Villagomez, counsel did consider calling Cristobal Mendoza and Ervey Mendoza (the applicant's brothers) as witnesses; but counsel was concerned one of the brothers may perjure himself and, to the best of counsel's recollection, the other was not available.

23.    As supported by the record, the applicant indicated he did not want Cristobal Mendoza to testify.  (4 R.R. 55).

24.    According to the credible affidavit of Ramon Villagomez, there was concern that one or both of the applicant's brothers could be implicated as parties to the offense.

25.    The State had evidence that one of the brothers may have been driving the vehicle the defendant arrived in and made his getaway in after the shooting.  (3 R.R. 160).

26.    According to the credible affidavit of Ramon Villagomez, no witnesses were threatened by defense counsel.

27.    Lucy Garcia was called as a witness in punishment.  (5 R.R. 26–30).

28.    The applicant fails to demonstrate that Lucy Garcia could have offered any testimony at guilt/innocence which would have created a

reasonable probability that the result of the proceeding would have been different.

29.   The applicant fails to prove, nor does he even allege with specificity, that further investigation into the background of State's witnesses would have revealed favorable, admissible evidence and that a reasonable probability exists that but for the failure to investigate, the result of the proceeding would have been different.

30.   The applicant fails to prove, nor does he even allege with specificity, that further scene investigation would have revealed favorable, admissible evidence, and that a reasonable probability exists that but for the failure to investigate, the result of the proceeding would have been different.

31.   The record clearly reflects that defense counsel did review the statement of Susan Ocampo prior to cross-examination.  (3 R.R. 134).

32.   The record clearly reflects that defense counsel used the written statement of Susan Ocampo to try to impeach her testimony.  (3 R.R. 134–139).

33.   The record clearly reflects that defense counsel did review the statement of Tamara Guzman prior to cross-examination. (3 R.R. 237).

34.   The applicant fails to prove that counsel's cross-examination amounted to deficient conduct and that but for the manner in which counsel cross-examined Susan Ocampo and Tamara Guzman a reasonable probability exists that the result of the proceeding would have been different.

35.   According to the record and the credible affidavit of Ramon Villagomez, counsel did not present defense witnesses who could have corroborated the applicant's story for a variety of reasons, including the fact that the applicant himself did not want them called to testify.  (4 R.R. 55–56).

36.   The applicant fails to demonstrate a reasonable probability that a motion for new trial would have been successful.

12

37.    As the applicant was not harmed by counsel's failure to file a motion for new trial, and is able to have the very same claim of ineffective assistance of counsel heard in the instant habeas application as would have been heard in a motion for new trial, he is not entitled to habeas relief on the ground of ineffective assistance for failure to file a motion for new trial.

38.    The totality of the circumstances reflect that the applicant received constitutionally effective assistance of counsel.

39.    In all things, [a]pplicant fails to show that his conviction was improperly obtained.

*Id.*, pp. 67–69 (citations, quotation marks omitted).  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.  *Ex parte Mendoza*, at cover.

*Ineffective Assistance at Guilt-Innocence*

Petitioner complains that trial counsel was ineffective during the guilt-innocence phase of trial in that he failed to hire an investigator to investigate the witnesses' backgrounds; failed to examine or visit the crime scene; failed to cross-examine witnesses as to their criminal histories and gang affiliations; and failed to present exculpatory witnesses.

According to petitioner, had counsel retained an investigator, the investigator would have found that the other shooting victims, Zuniga and Lopez, had "drugs and alcohol in their systems," not just alcohol.  In support, petitioner states that he saw them smoking marijuana the night of the offense and on other occasions, and that the medical examiner's report showed that the deceased complainant used marijuana.  (Docket Entry No. 24, pp.

13

3–4.)  Petitioner further argues that counsel should have checked the medical records of Zuniga and Lopez to see that they had "drugs in their system."  *Id.*

To establish a claim based on counsel's failure to hire an investigator, a petitioner must allege with specificity what the investigation would have revealed and how it would have benefitted him.  *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000).  Here, the record does not show, and petitioner presents no probative summary judgment evidence establishing, that medical records for Zuniga and Lopez would have reflected their consumption of marijuana or other drugs the day of the offense, or that an investigator would have found such evidence.  Petitioner's assertions of what the medical records might have shown are conclusory and speculative, and fail to raise a genuine issue of material fact precluding summary judgment.  *See Koch*, 907 F.2d at 530.  Moreover, petitioner presents no probative summary judgment evidence that counsel did not review the medical records or otherwise investigate these assertions, and that counsel found the medical records unhelpful.  Nor does petitioner establish that, but for counsel's failure to hire an investigator or review these medical records, there is a reasonable probability that the result of the trial would have been different.

Likewise, petitioner does not establish what counsel's visit to the crime scene would have shown, or how it would have benefitted his defense.  Petitioner presents no probative summary judgment evidence that counsel did not visit the crime scene, or that, but for counsel's failure to visit the crime scene, there is a reasonable probability that the result of

14

the trial would have been different.  Petitioner's conclusory and speculative argument is insufficient to meet his burden of proof under AEPDA or Rule 56 of the Federal Rules of Civil Procedure.

Petitioner's claim that counsel failed to cross-examine witnesses as to their criminal histories and gang affiliations also fails for these same reasons.  Petitioner presumes that the State's prosecution file had contained evidence establishing that two state's witnesses were gang members with assault convictions.  (Docket Entry No. 24, p. 4.)  He further alleges in general terms that other witnesses subpoenaed by the state had violent criminal backgrounds or gang affiliations, which trial counsel failed to explore during cross examination. Petitioner presents no probative summary judgment evidence of what information appeared in the prosecution's file, or of the criminal or gang histories of the relevant witnesses. Petitioner's conclusory allegations and speculations are unsupported in the record or by probative summary judgment evidence.  *See Koch*, 907 F.2d at 530.  Moreover, petitioner fails to establish that such evidence, assuming it existed, would have been admissible under state law.

Trial counsel testified in his affidavit submitted on collateral review that the State

maintained an open file policy in this case.  We had and did review the State's file.  The prosecutor allowed us reasonable access.  We found that the prosecutor was 'up front' in his dealings with us.  We saw and reviewed the statements in question.

15

*Ex parte Mendoza*, p. 170.  The trial court expressly found the affidavit testimony credible.

The trial court rejected petitioner's claim of ineffective assistance of trial counsel, and found

that

> The applicant fails to prove, nor does he even allege with specificity, that
> further investigation into the background of State's witnesses would have
> revealed favorable, admissible evidence and that a reasonable probability
> exists that but for the failure to investigate, the result of the proceeding would
> have been different.

*Id.*, p. 176.  The Court finds no fault with the state court's resolution of the issue, in that its

adjudication was not contrary to clearly established federal law as determined by the

Supreme Court, and did not involve an unreasonable application of clearly established federal

law as determined by the Supreme Court.   As petitioner establishes neither deficient

performance nor prejudice, habeas relief is unwarranted.

Petitioner fares no better on his claim that trial counsel failed to present exculpatory

witnesses during guilt-innocence.  In responding to petitioner's claim, trial counsel testified

in his affidavit as follows:

> Mike Hernandez and I did consider calling witnesses Alma Moran, Cristobal
> Mendoza, Elidia Galindo, and Ervey Mendoza. [Petitioner] was a very
> strong-willed, intelligent defendant, who was adamant in who he would and
> would not let us call as witnesses.  The whereabouts of Alma Moran were
> unknown to us for quite some time. [Petitioner] told us not to worry about
> Alma Moran, that he was having her 'sent away.'  During the course of trial,
> we were finally able to locate her.  [Petitioner] refused to allow us to call her
> or secure her attendance at the trial.  There was some concern that Cristobal
> Mendoza and Ervey Mendoza were parties to the offense.  Mike Hernandez
> and I were concerned that if they were called to testify, they might be
> identified.  However, at no point did Mike Hernandez or I instruct them that

they should leave the courtroom. We did see one of the brothers at the courtroom, and we had originally intended to call one of the brothers to testify; however, the more we heard of what his potential testimony might be, Mike and I were concerned that the witness was not telling the truth, and Mike and I could not put ourselves in the position to be suborning perjury. I do not believe that Mike or I ever saw or met with the other brother. I can not specifically remember why. He may have been made unavailable to us, I seem to recall him perhaps having absented himself. As to the defendant's mother, the defendant did not want her to testify. [Petitioner] was very protective of her. There was some concern that she had harbored him from police between the time of the murder and the time of his arrest. [Petitioner] did not want her to be cross-examined regarding that information. Further, Ms. Galindo only would have been a witness at punishment and not guilt/innocence because she did not have any direct knowledge of the offense.

As for Lucy Garcia, I personally did not meet her until the date of trial. I don't know when, if any, meetings were had between she and Mike, nor do I know what was discussed, if any discussions were had. She did not really have any first hand knowledge that would have been helpful in guilt/innocence. Everything she knew was hearsay.

(Docket Entry No. 19-27, pp. 61–62.) The trial court expressly found trial counsel's affidavit testimony credible, and found that

According to the record and the credible affidavit of Ramon Villagomez, counsel did not present defense witnesses who could have corroborated the applicant's story for a variety of reasons, including the fact that the applicant himself did not want them called to testify. (4 R.R. 55–56).

*Ex parte Mendoza*, p. 177. The Court finds no fault with the state court's resolution of this issue, in that its adjudication was not contrary to clearly established federal law as determined by the Supreme Court, and did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court. As petitioner establishes neither deficient performance nor prejudice, habeas relief is unwarranted.

17

The state court denied relief on petitioner's claims for ineffective assistance of trial counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

*Ineffective Assistance at Punishment*

Petitioner complains that trial counsel was ineffective during the punishment phase of trial by threatening potential mitigation witnesses with criminal prosecution if they testified. In rejecting this claim on collateral review, the trial court found that, based on trial counsel's credible affidavit, no witnesses were threatened by defense counsel. *Ex parte Mendoza*, p. 176. The state court further found that, based on the record and counsel's credible affidavit testimony, petitioner had instructed his counsel as to which witnesses would or would not be allowed to testify at punishment, and that petitioner declined to allow counsel to call the allegedly omitted punishment witnesses. *Id*.

In his response to the motion for summary judgment, petitioner does little more than disagree with the trial court's findings and decision, which is insufficient to satisfy his burden of proof under AEDPA. Petitioner's conclusory allegations and speculations are unsupported in the record or by probative summary judgment evidence. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue). The Court finds no fault with the state

court's resolution of the issue, in that its adjudication was not contrary to clearly established federal law as determined by the Supreme Court, and did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court.

The state court denied relief on petitioner's claims for ineffective assistance of counsel. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### *Ineffective Assistance of Appellate Counsel*

Petitioner complains that appellate counsel failed to seek a new trial based on trial counsel's ineffective assistance during guilt-innocence and punishment. Specifically, he contends that his appellate counsel should have filed a motion for new trial based on trial counsel's threats of criminal prosecution that prevented petitioner's wife from testifying. Petitioner claims that the motion would have been granted and that counsel would have been found ineffective.

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That

19

is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West*, 92 F.3d at 1396. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690–91.

In rejecting petitioner's claim, the trial court on collateral review found that petitioner failed to demonstrate a reasonable probability that a motion for new trial would have been successful. The trial court further found that petitioner was not harmed by counsel's failure to file a motion for new trial, as petitioner was able to raise the proposed ineffective assistance claims on collateral review. As a result, the trial court found that petitioner had established neither deficient performance nor prejudice under *Strickland*.

Petitioner again does little more than disagree with the trial court's findings and decision, which is insufficient to satisfy his burden of proof under AEDPA. Petitioner's conclusory allegations and speculations are unsupported in the record or by probative summary judgment evidence. *See Koch*, 907 F.2d at 530. Moreover, because this Court has rejected petitioner's underlying claims of ineffective assistance of trial counsel, no prejudice

is shown.  The Court finds no fault with the state court's resolution of the issue, in that its adjudication was not contrary to clearly established federal law as determined by the Supreme Court, and did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court.

The state court denied relief on petitioner's claims for ineffective assistance of appellate counsel.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### Delay in State Habeas Proceedings

To the extent petitioner complains that the trial court's delay in processing his application for state habeas relief denied him due process, no cognizable federal habeas claim is raised.    States have no constitutional obligation to provide post-conviction relief. *Lackawanna County Dist. Atty. v. Coss*, 523 U.S. 394, 402–03 (2001).  As a result, claims concerning alleged errors in state post-conviction proceedings are matters of state law which are not cognizable in federal habeas corpus proceedings.  *See Engle v. Isaac*, 456 U.S. 107, 119 (1983); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995); *see also, Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir. 1999).  This Court's review is limited to matters of constitutional magnitude and violations of federal law, neither of which is raised by petitioner's claim of delay during state collateral review.

21

*Motion to Consolidate*

Petitioner's motion to consolidate this case with his habeas case in *Mendoza v. Thaler*, C.A. No. H-12-2338 (S.D. Tex. 2012), is DENIED AS MOOT.  The latter case was dismissed on October 4, 2012.

*Conclusion*

The motion for summary judgment (Docket Entry No. 21) is GRANTED and this case is DISMISSED.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on January 16, 2013.

_____
Gray H. Miller
United States District Judge

22